FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| PAUL G., a conserved adult; by and through his conservator Steve G., *Plaintiff-Appellant*, | No. 18-16536 |
| | D.C. No. 5:16-cv-05582-BLF |
| v. | |
| MONTEREY PENINSULA UNIFIED SCHOOL DISTRICT; CALIFORNIA DEPARTMENT OF EDUCATION, *Defendants-Appellees*. | OPINION |

Appeal from the United States District Court
for the Northern District of California
Beth Labson Freeman, District Judge, Presiding

Argued and Submitted June 13, 2019
San Francisco, California

Filed August 12, 2019

Before: Mary M. Schroeder and Milan D. Smith, Jr.,
Circuit Judges, and Jed S. Rakoff,[*] District Judge.

Opinion by Judge Schroeder

---

[*] The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

## SUMMARY[**]

### Education Law

The panel affirmed the district court's dismissal, for failure to exhaust remedies under the Individuals with Disabilities Education Act, of claims under the Americans with Disabilities Act and § 504 of the Rehabilitation Act.

A student's parents sought damages under the ADA and § 504 on the basis that the residential placement he should have received under the IDEA was not available in California. Plaintiffs failed to exhaust because they settled their IDEA case without receiving an administrative decision on whether the lack of an in-state residential placement had denied the student a free and appropriate public education. The panel held that exhaustion was required because plaintiffs sought relief that would also be available under the IDEA. Agreeing with other circuits, the panel concluded that the ADA and § 504 claims concerned whether the student was provided appropriate educational services. The panel held that plaintiffs' claims did not fall under exhaustion exceptions because they did not seek relief for a policy or practice of general applicability, and exhaustion would not have been futile or inadequate.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Daniel R. Shaw (argued), Shaw Firm, San Luis Obispo, California; Christian Knox, F. Richard Ruderman, and Colleen A. Snyder, Ruderman and Knox LLP, Sacramento, California; for Plaintiff-Appellant.

Leonard Bruce Garfinkel (argued), Deputy General Counsel; Todd M. Smith and Edmundo R. Aguilar, Assistant General Counsel; Amy Bisson Holloway, General Counsel; California Department of Education, Sacramento, California; for Defendants-Appellees.

**OPINION**

SCHROEDER, Circuit Judge:

The parents of Paul G. ("Paul"), an autistic child, seek damages because the placement they believe their child should have received under the Individuals with Disabilities Education Act ("IDEA") is not available in California. They filed this action under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973. The district court dismissed their complaint for failure to exhaust their administrative remedies under the IDEA. We affirm. Plaintiffs failed to exhaust because they settled their IDEA case without receiving an administrative decision on whether Paul needed the placement they now assert was required for him to receive a free and appropriate public education ("FAPE").

Paul is an adult student whose family resides near Monterey, California. His is a sad story of failed attempts to

place him in an appropriate educational facility. During elementary school and early high school, Paul was enrolled as a special education student in the Monterey Peninsula Unified School District. During his junior year in high school (2014–15), he began having episodes of violent and threatening behavior towards the school staff and fellow students. After unsuccessful efforts to provide instruction at home and in the local library, the school district in July of 2015 held an Individualized Education Plan ("IEP") meeting and offered to place Paul in a residential facility. Because he was by then 18 years old, however, no residential facility in the state would accept him. Paul subsequently enrolled in a residential facility in Kansas, but became homesick and returned to California.

Paul's counsel initiated IDEA administrative proceedings in August 2015, seeking a due process hearing with the California Office of Administrative Hearings (OAH). His complaint alleged he had been denied a FAPE guaranteed under the IDEA. He sought a residential placement in California, monetary damages, and an order directing the California Department of Education ("CDE") and the school district to develop in-state residential placements for adult students like Paul.

OAH dismissed the claims against the state, ruling that the agency did not have jurisdiction to order the creation of facilities for students over l8, and that the school district, not the state, was responsible for education decisions affecting Paul. Paul then entered into a settlement agreement with the school district in which OAH dismissed the case without ever ruling on his claim that the lack of an in-state residential facility had denied him a FAPE.

Paul filed this action in federal court in September 2016, following the settlement with the school district. His complaint alleged that CDE violated the Rehabilitation Act and the ADA. The gravamen of his complaint was that to receive a FAPE he required a residential placement, and the state had failed to provide him one in California. He sought monetary damages and an injunction.

The complaint did not and could not allege that Paul's IEP required a placement in California; he had not obtained such a decision from the OAH. The CDE therefore moved to dismiss on the ground that Paul could not pursue claims against the CDE for failure to provide a FAPE when he had no IEP requiring an in-state placement. The district court dismissed for failure to exhaust administrative remedies as required by the IDEA. *See* 20 U.S.C. § 1415(*l*).

Paul's district court complaint alleged discrimination in violation of the Rehabilitation Act and the ADA; it did not allege a violation of the IDEA. The IDEA is nevertheless key in this case because it is that federal law that guarantees individually-tailored educational services for children with special educational needs. *See id*. §§ 1400(d)(1)(A), 1401(29). It provides for a FAPE that must conform to a student's IEP, which is a program detailing the student's abilities, educational goals, and specific services that are designed to achieve those goals within a designated time frame. *See id*. §§ 1412(a)(4), 1436(d).

The IDEA also contains procedural protections for the resolution of disputes over what services must be provided. There must be an opportunity for mediation, an impartial due process hearing, and an appeals process. *See id*. § 1415(e)–(g). In California, the CDE contracts with the

OAH to provide these remedies. *See* Cal. Educ. Code § 56504.5(a). The OAH decision is a final administrative decision, *see* 20 U.S.C. § 1415(i)(1)(A), and either the parent or the public agency may seek judicial review by filing a civil action in district court within 90 days, *see id*. § 1415(i)(2). The statute provides that where the relief sought under other statutes is also available under the IDEA, the IDEA's administrative procedures must have been exhausted:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(*l*).

This Court, however, has identified certain exceptions to the exhaustion rule. In the seminal case, *Hoeft v. Tucson Unified School District*, 967 F.2d 1298 (9th Cir. 1992), we held that exhaustion is not required when (1) use of the administrative process would be "futile," (2) the claim arises from a policy or practice "of general applicability that is contrary to law," or (3) it is "improbable that adequate relief can be obtained by pursuing administrative remedies (e.g. the hearing officer lacks the authority to grant the relief sought)."

*Id.* at 1303–04 (citing H.R. Rep. No. 296 99th Cong, 1st Sess. 7 (1985)).

Paul's position is that California has unlawfully discriminated against him by not providing a residential educational facility for adult students in the state who, like Paul, require such a facility in order to receive a FAPE. He argues he need not exhaust because his claims seek relief for disability discrimination and that even if his claims do involve denial of a FAPE, they fall under the exhaustion exceptions.

The fundamental problem with Paul's position in the view of the district court, and in ours, is that he has no IEP that requires such an in-state placement. He settled his claim with the school district that had sought such an IEP. His existing IEP provides only for a residential placement. The district court therefore properly dismissed for failure to exhaust administrative remedies.

On appeal, he stresses that he is not claiming any violation of the IDEA. Instead, he brought suit under the ADA and Rehabilitation Act. The Supreme Court has recently provided guidance as to when there must be administrative exhaustion in a case purportedly invoking statutes other than the IDEA. *See Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743 (2017). The Court instructed us to determine whether "the gravamen of the plaintiff's suit is something other than the denial of the IDEA's core guarantee — . . . 'a free appropriate public education.'" *Id.* at 748 (quoting § 1412(a)(1)(A)). In *Fry* the suit alleged the ADA and the Rehabilitation Act's discrimination provisions were violated when a young girl disabled by cerebral palsy was not permitted to bring her service dog to school. *Id.* at 751.

Looking to the gravamen of the suit, the Court concluded that the plaintiff's suit did not concern the denial of a FAPE. *Id.* at 758. It held that the case instead concerned the denial of access to public facilities. *See id.* Relief was therefore not available under the IDEA. Exhaustion therefore was not required.

The crucial issue is therefore whether the relief sought would be available under the IDEA. *See* 20 U.S.C. § 1415(*l*). The Court provided clues for courts to decide that question, including "whether the plaintiff could have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school, and . . . whether an adult at the school could have pressed essentially the same grievance." *Fry*, 137 S. Ct. at 756. The Court also said that one good indication that the plaintiff is seeking relief for denial of a FAPE is whether the plaintiff previously invoked administrative remedies. *Id*. at 757. Since a dog would not be among the services a school district would ordinarily provide in a FAPE, and the plaintiff in that case had never invoked administrative remedies to obtain such a FAPE, the gravamen of the *Fry* complaint was not an IDEA claim.

In this case, Paul could not have brought the same claims against a public facility that was not a school, nor could an adult employee or visitor present the same grievance, because the relief Paul seeks is fundamentally educational — access to a particular kind of school as required by his IEP. *See id*. at 756 (claims are based on the IEP when access is "adequacy of special education" and not "equality of access to public facilities"). Further, Paul pursued remedies under IDEA and after settlement switched gears to turn to other remedies. This is almost precisely the scenario the Supreme Court in *Fry* described as an indicator of an IDEA claim requiring

exhaustion.  As the Court explained, an initial decision to pursue the administrative process and a later shift to judicial proceedings prior to full exhaustion is a strong indication that the plaintiff is making "strategic calculations about how to maximize the prospects of such a remedy."  *Id*. at 757.

The district court understood that because Paul's claim is that an in-state residential institution is necessary for him to receive the education guaranteed under the IDEA, he must exhaust his administrative remedies for an IEP.  Applying *Fry*, the district court held that the "alleged denial to provide an in-state residential treatment facility applies solely in a school setting" and the fact that Paul "previously pursued an IDEA administrative proceeding based on identical or similar allegations supports the conclusion that his claims are premised on a denial of a FAPE."  We agree with that conclusion.

Other circuit decisions since *Fry* have reached similar conclusions.  In *Wellman v. Bulter Area School District*, the Third Circuit concluded that the student's "grievances all stem from the alleged failure to accommodate his condition and fulfill his educational needs" and dismissed the complaint because the student released all claims related to the FAPE denial in a settlement agreement with the school district. 877 F.3d 125, 133 (3d Cir. 2017).  In *Nelson v. Charles City Community School District*, the Eighth Circuit affirmed the district court's conclusion that the student's complaint sought relief available under the IDEA because the denial of the student's request for online classes was directly related to the student's IEP.  900 F.3d 587, 595 (8th Cir. 2018).  In *Durbrow v. Cobb County School District*, a student with Attention Deficit Hyperactivity Disorder filed a due process complaint alleging the school district failed to evaluate him

for disabilities. 887 F.3d 1182, 1187 (11th Cir. 2018). The Eleventh Circuit concluded the gravamen of the student's § 504 and ADA claims in the district court was denial of a FAPE because the claims focused on the adequacy of the educational program the school district afforded the student. *Id*. at 1190. Exhaustion was required. Here, like our sister circuits, we conclude Paul was required to exhaust the IDEA procedural process because his § 504 and ADA claims concern whether he was provided appropriate educational services.

Paul argues that even if his claims do concern the denial of a FAPE, they fall under all three exhaustion exceptions: (1) the administrative process would be "futile," (2) the claim arises from a policy or practice "of general applicability that is contrary to law," or (3) it is improbable "that adequate relief can be obtained by pursuing administrative remedies (e.g. the hearing officer lacks the authority to grant the relief sought)." *Hoeft*, 967 F.2d at 1303–04.

Paul suggests that he seeks relief for "a policy or practice of general applicability that is contrary to the law" because CDE failed to provide residential placements for disabled students over the age of eighteen. A claim is systemic, and therefore entitled to the general applicability exception, if it concerns "the integrity or reliability of the IDEA dispute resolution procedures themselves, or requires restructuring the education system itself in order to comply with the dictates of the Act." *Doe ex rel. Brockhuis v. Ariz. Dep't of Educ.*, 111 F.3d 678, 682 (9th Cir. 1997). Here, however, Paul seeks relief related to only one component of the school district's special education program — in-state residential facilities for adult students. *See id*.; *see also Hoeft*, 967 F.2d at 1308.

Paul also contends exhaustion would have been futile and inadequate because, when he filed his due process administrative complaint against the school district and the CDE, the OAH dismissed the CDE on the ground that it could not order the state to create a whole new facility. The OAH concluded it lacked jurisdiction to order "structural and systemic statewide relief." Paul then settled the claim against the school district without obtaining any decision on his claim that the lack of in-state placement denied him a FAPE. He now argues it would have been futile to pursue the IDEA claim because the state could not be required to provide the facility.

A principle purpose of requiring administrative exhaustion, however, is to ensure the agency has had an opportunity to rule on a claim before a plaintiff goes to court. *See Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 875–76 (9th Cir. 2011). Thus, if the plaintiff is claiming a violation of the IDEA, the plaintiff must take that claim through the administrative process. The Supreme Court in *Fry* reiterated the principle in clear terms. *Fry*, 137 S. Ct. at 756–57. In this case, Paul is claiming that the state must provide him with an in-state residential placement and must pay damages for failing to do so. The only basis for such a claim is that such a placement is required under the IDEA. The agency's dismissal of the state does not excuse Paul's failure to pursue the claim against the school district, because that was the only way to obtain an administrative ruling on his claim that he was denied a FAPE. Thus, as the district court correctly concluded, Paul may not maintain this action after he failed to seek a final administrative decision regarding his alleged need for in-state residential education.

**AFFIRMED.**